UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHARLES MAYFIELD, | Case No. 13-10341 |
| Plaintiff, | Linda V. Parker |
| v. | United States District Judge |
| RICHARD MILES, | Michael Hluchaniuk |
| | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION**
**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**
**(Dkt. 52)**

**I.      PROCEDURAL HISTORY**

On January 29, 2013, plaintiff Charles Mayfield, an inmate currently in the custody of the Michigan Department of Corrections, brought this action under 42 U.S.C. § 1983 against several defendants, claiming a violation of his rights under the United States Constitution.  (Dkt. 1).  Following the Court's rulings regarding the dismissal of several named defendants (Dkt. 21, 33, 45), plaintiff filed an amended verified complaint against the only remaining defendant, Dr. Richard Miles, on February 6, 2014, alleging a claim for deliberate indifference to his serious medical needs.  (Dkt. 34, 40).  On April 16, 2014, this case was referred to the undersigned for all pretrial purposes by District Judge Thomas L. Ludington. (Dkt. 53).  Plaintiff filed a motion for temporary restraining order on April 14,

2014. (Dkt. 52). Defendant Dr. Miles filed a response to plaintiff's motion on May 5, 2014. (Dkt. 55). This motion is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for a temporary restraining order be **DENIED**.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Claims

Plaintiff, an inmate currently in the custody of the Michigan Department of Corrections, brings this action under 42 U.S.C. § 1983 against Dr. Miles, claiming a violation of his rights under the United States Constitution. (Dkt. 34, 40). Plaintiff claims that Dr. Miles was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, based on medical treatment he received for alleged multiple myeloma in 2011 and 2012. (Dkt. 34). Plaintiff alleges that he was diagnosed with multiple myeloma in November 2010 by Dr. Shan Ansari, and that he was discharged with instructions to Dr. Miles to pursue follow-up and preventive care, including chemotherapy, a cancer specialist consultation, and a therapeutic diet. (*Id.*, ¶ 2). Plaintiff claims that he saw Dr. Miles numerous times between 2011 and 2012, asserting written and verbal complaints of continued pain, but that Dr. Miles refused to provide the recommended follow-up care and denied plaintiff any preventive care or

2

treatment. (*Id.* ¶¶ 3-22). Plaintiff alleges that his quality of life has been compromised by the lack of medical care, and that if Dr. Miles would have addressed plaintiff's serious health issues when brought to his attention, plaintiff's cancer would have been contained and treated. (*Id.* ¶ 23). Plaintiff contends that Dr. Miles denied him adequate treatment for his serious medical issues in violation of the United States Constitution and he seeks declaratory and injunctive relief and an award of compensatory and punitive damages. (*Id.* ¶ 29).

### B. Plaintiff's Motion for Temporary Restraining Order (Dkt. 52)

Plaintiff filed a Motion for Temporary Restraining Order claiming that he is not receiving medical care for multiple myelomas or Hepatitis C, asserting that he requires physical therapy and requesting a transfer back to a prior correctional facility for "medically appropriate" care. (Dkt. 52).[1] Plaintiff argues that he is suffering irreparable harm in the form of continued physical and emotional pain and suffering, and that if he does not receive proper treatment at the proper time, he may die. Plaintiff further argues that the balance of hardships favor plaintiff, as his suffering is enormous and the defendant's hardship if the motion is granted, which consists of taking plaintiff to a suitable doctor and then carrying out the

---

[1] Plaintiff directs his motion at "defendants Randall Haas and F. Artis" to arrange for his transfer back to the Cotton Correctional Facility and for an examination and plan of treatment by a qualified specialist. (Dkt. 52). However, neither Hass nor Artis are, or were, defendants in this action, and Dr. Miles is the only named defendant in plaintiff's amended complaint.

doctor's order, "amounts to no more than business as usual." Plaintiff also argues that he is likely to succeed on the merits of his claims because defendant has intentionally interfered with medical treatment once prescribed, in violation of the Constitution. Plaintiff requests a transfer from the Chippewa Correctional Facility back to the G. Robert Cotton Correctional Facility, and that he be placed in a single person cell. Finally, plaintiff contends that the relief sought will serve the public interest because it is always in the public interest for prison officials to obey the law.

### C. Defendant's Response to Plaintiff's Motion (Dkt. 55)

Defendant Dr. Miles argues that plaintiff's motion should be denied because he continues to receive care for his medical conditions. Dr. Miles supports his arguments with an affidavit by Michael Brostoski, D.O., the doctor who currently provides care for plaintiff at the Chippewa Correctional Facility ("URF"), and with selected medical records. (Dkt. 55, 55-2, 57, 57-1). According to Dr. Miles, Dr. Brostoski first reviewed plaintiff's medical chart on March 7, 2014, when plaintiff was transferred to URF. (Dkt. 55-2, ¶ 6). Among other medical issues and conditions, Dr. Brostoski reviewed the status of plaintiff's recent care and treatment related to multiple myeloma and Hepatitis C, and he attests that there is no objective evidence that a multiple myeloma diagnosis had actually been assigned to plaintiff at any time, that amyloidosis had been questioned, and that

4

plaintiff was being monitored. (*Id.*). Dr. Brostoski further avers that plaintiff had also been approved for consultation with the infectious disease specialist who had determined that plaintiff was not a current candidate for the available antiviral therapy for Hepatitis C based on his current medical conditions and plan of care. (*Id.*)

Dr. Brostoski had a chronic care visit with plaintiff on March 12, 2014, during which time his medical conditions were addressed at length. (*Id.*, ¶ 7). At that time, Dr. Brostoski noted the ongoing efforts to clarify plaintiff's diagnoses and ordered further follow up care and evaluation, which has continued to be provided to him, including medical appointments on March 19 and 27, 2014. (*Id.*). On April 2, 2014, Dr. Brostoski saw plaintiff to assess the origin and disposition of his alleged multiple myeloma diagnosis. (*Id.*, ¶ 8). Plaintiff reported a diagnosis in 2010, and claimed that he had not been provided treatment. (*Id.*). Following this appointment, Dr. Brostoski ordered additional follow up, including lab work and a referral to an oncologist to further assess plaintiff's unresolved past diagnosis of multiple myeloma, which was approved and scheduled on plaintiff's behalf for April 18, 2014. (*Id.*). In the interim, Dr. Brostoski saw plaintiff on April 9 and 16, 2014 for scheduled appointments. (*Id.*). Plaintiff then refused to attend the April 18, 2014 appointment with the oncologist, but follow up care is still being provided. (*Id.*, ¶¶ 5, 9).

Dr. Miles contends that Dr. Brostoski has reviewed plaintiff's past medical records at length, particularly those concerning the alleged multiple myeloma diagnosis in 2010, and opined that contrary to plaintiff's belief, the testing done in 2010 did not indicate multiple myeloma. (*Id.* ¶ 10). Dr. Miles asserts that there was an abnormality revealed by the bone marrow biopsy that appeared to be benign; but there was no diagnosis of multiple myeloma. (*Id.*). In addition, the oncologist in 2010 indicated that even if the abnormality was multiple myeloma, in light of plaintiff's multiple comorbidities, a "wait and see" approach was recommended. (*Id.*). Plaintiff has been monitored since that time. (*Id.*). Dr. Miles continues that although plaintiff's medical records suggest that after he returned to the hospital for unrelated issues later in 2010, he may have received some limited treatment for multiple myeloma and an oncology follow up was requested by his provider after he returned to his facility, an alternative treatment was directed at the regional level based on plaintiff's negative bone marrow biopsy and poor cardiac function. (*Id.*). Dr. Brostoski has relayed this information to plaintiff. (*Id.*). Dr. Miles asserts that plaintiff is not being denied care for multiple myeloma as he has not been diagnosed with multiple myeloma and thus requires no treatment, and that he is not being denied care for Hepatitis C. (*Id.* ¶ 12). Plaintiff was scheduled for a consultation with the infectious disease specialist on April 23, 2014 to discuss management options for plaintiff's

condition, but plaintiff refused to attend the appointment. (*Id.* ¶¶ 6, 12). Following this refusal, plaintiff was directed to follow up as previously scheduled and advised to contact medical with any questions as needed. (*Id.* ¶ 12). Finally, Dr. Brostoski avers that plaintiff has not complained of a need for physical therapy, nor is any such treatment medically indicated for him at this time. (*Id.* ¶ 13).

Dr. Miles argues that the Court should not issue any immediate injunctive relief to plaintiff as the evidence does not show that plaintiff is at risk of suffering irreparable injury; plaintiff is unlikely to succeed on the merits of his constitutional claims; and it is contrary to the interests of the public, as well as detrimental to the practice of medicine within the constitutional system, for the court to second guess the medical judgment of medical providers. Dr. Miles therefore requests that the Court deny plaintiff's motion for a temporary restraining order.

## III. ANALYSIS AND CONCLUSION

### A. Governing Law

Plaintiff seeks an injunction compelling defendant to provide him with a medically appropriate course of medications and treatment for his medical issues, including physical therapy. In determining whether a TRO is proper, the court considers four factors: (1) whether plaintiff has a strong likelihood of success on

the merits; (2) whether plaintiff has shown irreparable injury; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *See Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005). Although no single factor is controlling when determining whether a preliminary injunction should issue, the likelihood of success on the merits is often the predominant consideration. *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal."). Plaintiff bears the burden of demonstrating his entitlement to a preliminary injunction, and his burden is a heavy one because injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Indeed, the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000); *see also McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) ("The proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion because a preliminary injunction is an extraordinary remedy."). "Further, where a prison inmate seeks an order enjoining state prison

officials, this Court is required to proceed with the utmost care and must be cognizant of the unique nature of the prison setting." *See Christian v. Michigan Dep't of Corrs.-Health Servs.*, 2013 WL 607783, at *2 (E.D. Mich. Jan. 28, 2013) (citing *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984)), *adopted by* 2013 WL 607779 (E.D. Mich. Feb. 19, 2013). Indeed, the Prison Litigation Reform Act requires that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Because of this, courts have identified three types of particularly disfavored preliminary injunctions: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits." *See Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1259 (10th Cir. 2005). Motions seeking such preliminary injunctive relief must be more closely scrutinized than the already-disfavored motion for preliminary injunction which seeks to maintain the status quo. *See id*.

### B. Analysis of the Preliminary Injunction Factors

Under controlling Sixth Circuit authority, plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff here alleges an Eighth Amendment claim for deliberate indifference to his medical needs. (Dkt. 34). In the context of medical care, a prisoner's Eighth Amendment right to be free from cruel and unusual punishment is violated only when the prisoner can demonstrate a "deliberate indifference" to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) (citations omitted). Moreover, mere negligence in identifying or treating a medical need does not rise to the level of a valid mistreatment claim under the Eighth Amendment. *Estelle*, 429 U.S. at 106.

The undersigned finds that, based on the evidence in the record, plaintiff has failed to meet his "initial burden" of showing a strong or substantial likelihood of success on the merits. Rather, the essence of plaintiff's allegations reflect plaintiff's disagreement with defendants over proper medical treatment and the

necessity for different treatment, which is insufficient to support a claim under the Eighth Amendment. *See Saadeh v. Hemingway,* 37 Fed. Appx. 194, 195 (6th Cir. 2002) (holding plaintiff's motion for injunctive relief was properly denied because his complaint--that he was not being properly treated for back pain--failed to state a claim of an Eighth Amendment violation); *Chapman v. Parke*, 1991 WL 203080, at *2 (6th Cir. Oct. 4, 1991) ("[A] difference of opinion regarding treatment or his need for surgery is insufficient to state a claim under the Eighth Amendment.").

The record shows that plaintiff has received continuous medical evaluations, tests, treatment and medication while under the care of Dr. Miles, and that he continues to receive treatment while under the care of Dr. Brostoski. (Dkt. 55, 55-1, 55-2). Plaintiff acknowledges that he received treatment (Dkt. 34), but contends that the evaluations were not adequate and that he did not receive proper treatment. The record shows that plaintiff's requests for treatment were not ignored. Rather, plaintiff was prescribed alternative courses of treatment based on the doctors' exercise of their professional medical judgment regarding the appropriate course of treatment. Even if these decisions were wrong or negligent, they do not show deliberate indifference to plaintiff's serious medical needs. Dr. Miles and Dr. Brostoski provided medical attention and provided diagnostic tests and medication, just not the medication or treatment plaintiff wanted. That plaintiff disagrees with this course of treatment does not amount to deliberate

11

indifference because it is well settled that "differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim." *Christian*, 2013 WL 607783, at *5 (citation omitted); *see also Greenman v. Prison Health Servs.*, 2011 WL 6130410, at *10 (W.D. Mich. Dec. 8, 2011) (granting summary judgment where "the record shows that defendant treated plaintiff's condition on an ongoing basis with appropriate medications. Further, plaintiff's preference for narcotics and his dissatisfaction with the non-narcotic pain medications prescribed by [defendant] falls far short of supporting an Eighth Amendment claim.").

In sum, plaintiff's disagreement with particular medical decisions made by Dr. Miles and Dr. Brostoski and his conclusory allegations of deliberate indifference do not negate Dr. Miles' allegations that plaintiff's medical needs were reasonably and diligently addressed over an extended period of time, and continue to be addressed. Moreover, even if plaintiff is able to show a disputed issue of fact as to whether his medical treatment is appropriate, such a showing is not sufficient for equitable relief. *See Leary*, 228 F.3d at 739 (noting that the proof required to obtain a preliminary injunction is much more stringent thatn the proof required to survive a summary judgment motion). This Court is ill-equipped to micro-manage prison medical treatment. *See Westlake*, 537 F.2d at 860 n. 5. Although the undersigned makes no final determination on the merits of plaintiff's

claim, it appears at this stage that plaintiff has not made a substantial showing of deliberate indifference to a serious medical need. Plaintiff, therefore, fails to demonstrate a strong likelihood of success on the merits of his claims, based on the evidence in the record to date, and his motion for injunctive relief should be denied.

Given plaintiff's lack of likelihood of success on the merits, it is not necessary to discuss the other injunction factors in great detail. *See Gonzales*, 225 F.3d at 625 ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal."). The presence of irreparable harm is not evident. First, because it appears unlikely, on the current record, that plaintiff will be able to demonstrate that he has a cognizable constitutional claim, he is not entitled to a presumption of irreparable harm based on the alleged constitutional violation. *See*, *e.g.*, *Overstreet*, 305 F.3d at 578. Plaintiff requires no treatment for multiple myeloma because he has no diagnosis of multiple myeloma, nor does he show any signs or symptoms of multiple myeloma, and he continues to receive treatment for his claimed serious medical needs. (Dkt. 55-1, ¶¶ 5, 7-11). Dr. Brostoski avers that plaintiff's blood cell count remains stable and he has suffered no infections related to his white blood cell count. (*Id.* ¶ 11). Moreover, plaintiff was recently referred to an oncologist for further review, but he refused to attend the appointment. (*Id.* ¶ 9). Similarly,

13

plaintiff was recently scheduled for follow up with the infectious disease specialist concerning his Hepatitis C, but he refused to attend the appointment. (*Id.* ¶¶ 6, 12). In short, plaintiff has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction.

Finally, the interests of the identifiable third parties and the public at large weigh against an injunction. "The MDOC has an interest in promulgating and enforcing prison regulations, including reasonable rules involving prisoner health care, and in contracting with licensed medical providers such as PHS. The public has an interest both in ensuring that prison inmates receive medical care, and also in having a well-regulated and operated prison system. PHS and its medical personnel have an interest in practicing medicine based on their best medical judgment and on the needs of their patients." *Robbins v. Payne*, 2012 WL 3584235, at *3 (E.D. Mich. July 9, 2012) (denying plaintiff's motion for preliminary injunctive relief), *adopted by* 2012 WL 3587631 (E.D. Mich. Aug. 20, 2012). Decisions concerning the administration of prisons are vested in prison officials, in the absence of a constitutional violation, and any interference by the federal courts in that activity is necessarily disruptive. The public welfare therefore militates against the issuance of preliminary injunctive relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). And, plaintiff is, in

effect, seeking relief as if he has already prevailed on the merits and demonstrated inadequate care. But the purpose of a preliminary injunction is to maintain the relative positions of the parties until proceedings on the merits can be conducted. *Camenisch*, 451 U.S. at 395. Because plaintiff's requested relief would alter the status quo, the public interest is not served by granting the motion for a preliminary injunction. Therefore, a balancing of the above factors weighs substantially against a grant of preliminary injunctive relief.

### III.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for temporary restraining order be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 3, 2014           s/Michael Hluchaniuk
                                  Michael Hluchaniuk
                                  United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on September 3, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kimberly A. Koester and Ronald W. Chapman. I also certify that I served the foregoing paper via U.S. Mail on Charles Mayfield, #127467 at Earnest C. Brooks Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444.

                                  s/Tammy Hallwood
                                  Case Manager
                                  (810) 341-7887
                                  tammy_hallwood@mied.uscourts.gov