UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES MAYFIELD,                                Case No. 13-10341

                    Plaintiff,                   Linda V. Parker
v.                                               United States District Judge

RICHARD MILES,                                   Michael Hluchaniuk
                                                 United States Magistrate Judge
                    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 69)**

**I.      PROCEDURAL HISTORY**

On January 29, 2013, plaintiff Charles Mayfield, an inmate currently in the

custody of the Michigan Department of Corrections, brought this action under 42

U.S.C. § 1983 against several defendants, claiming a violation of his rights under

the United States Constitution.  (Dkt. 1).  Following the Court's rulings regarding

the dismissal of several named defendants (Dkt. 21, 33, 45), plaintiff filed an

amended verified complaint against the only remaining defendant, Dr. Richard

Miles, on February 6, 2014, alleging a claim for deliberate indifference to his

serious medical needs.  (Dkt. 34, 40).  On April 16, 2014, this case was referred to

the undersigned for all pretrial purposes by District Judge Thomas L. Ludington.

(Dkt. 53).  On May 28, 2014, this case was reassigned to District Judge Linda V.

Parker. (Dkt. 64). On July 14, 2014, defendant Dr. Richard Miles filed a motion for summary judgment, seeking dismissal of all claims against him. (Dkt. 69). Plaintiff filed a response to this motion on September 19, 2014 (Dkt. 77), and defendant filed a reply brief in support of his motion on October 3, 2014. (Dkt. 78). This motion is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED** and that plaintiff's claims be **DISMISSED WITH PREJUDICE**.

## II.    FACTUAL BACKGROUND

Plaintiff is an inmate currently in the custody of the Michigan Department of Corrections. In January of 2010, plaintiff was admitted to Lapeer Regional Medical Center due to congestive heart failure and worsening renal insufficiency. (Dkt. 69-1, Miles Decl. ¶ 6; Dkt. 71-6, Medical Record, Pg ID 875). During this admission, lab work revealed plaintiff had monoclonal gammopathy, and he was referred to oncology for evaluation. Monoclonal gammopathy of undetermined significance ("MGUS") is the presence of an abnormal protein in the blood. It is usually benign, but occasionally can be associated with another disease or can progress to another disorder, such as Multiple Myeloma ("MM"). MM is a cancer of the plasma cells located in bone marrow. When a patient has MGUS, his medical providers will monitor his condition to ensure it does not progress, but the

patient will not require treatment.  (Dkt. 69-1, ¶ 5).  While at Lapeer, providers

ordered numerous tests on plaintiff to rule out ths possibility of MM, including a

long bone survey, bone marrow aspiration and biopsy, chromosomal analysis, and

flow cystometry.  (Dkt. 71-6, Pg ID 878, 881, 883-84, 887-90; Dkt. 71-7, Pg ID

907-09).  However, plaintiff was discharged from Lapeer without a definitive

diagnosis.  (Dkt. 71-6, Pg ID 875).  He was scheduled for follow up with oncology

on February 18, 2010, for further evaluation.  (*Id.* at 870, 874).

On February 18, 2010, plaintiff was confirmed to have a plasma cell

dyscrasia, of which MGUS and MM are subsets.  (Dkt. 71-6, Pg ID 858).  Dr.

Trimble wrote as follows regarding plaintiff's condition:

> He has a past history of advanced ischemic
> cardiomyopathy with a 20% ejection fraction, coronary
> artery disease with multiple stents, and a plantable
> defibrillator from 2008, hypertension, hepatitis C, and is
> a long term smoker . . . .
>
> At this point, I am not sure he has myeloma.  He has
> features of monoclonal gammopathy of undetermined
> significance with normal immunoglobins, but he may
> have some lytic bone disease, and in the presence of
> 10%-15% plasma cells, this is certainly suspicious. . . .
>
> In view of his multiple medical comorbidities, I really do
> not think at this point unless there is an absolute reason
> to treat, in that we should take anything but a watch and
> wait approach.

(Dkt. 71-6, Pg ID 856-57).  Plaintiff then returned to G. Robert Cotton that day

and PA LaToya Jackson noted she would follow through with oncology on March 16, 2010.  (*Id.* at 851).

On March 12, 2010, plaintiff attended follow up with oncology.  (Dkt. 71-5, Pg ID 846).  The oncologist noted a diagnosis of MGUS, "but, at this point, [plaintiff] did not clearly have symptoms of myeloma."  (*Id.*)  The oncologist mentioned that amyloidosis might be a possibility,[1] but noted that even if plaintiff had MM, his physical condition precluded therapy.  (*Id.*)  Plaintiff was instructed to return to oncology for follow up in three months.  (*Id.* at 844-45).

Dr. Miles saw plaintiff for the first time on June 24, 2010, and noted that plaintiff had an oncology follow up scheduled for June 25.  (Dkt. 71-5, Pg ID 836, 838).  The oncologist thought plaintiff might have amyloidosis and requested an echocardiogram to rule out this condition.  (*Id.*)  On July 9, 2010, onsite provider Dr. Cody noted that plaintiff had two prior echoes without evidence of amyloidosis, and faxed the reports to oncology.  (*Id.* at 835).

On August 13, 2010, Dr. Miles followed up with plaintiff for a rash and possible MM, and noted to follow up with oncology.  (Dkt. 71-5, Pg ID 828-29).  On September 20, 2010, plaintiff attended an oncology appointment, and the oncologist noted plaintiff's diagnosis as "MGUS stable."  (*Id.* at 825).  After

---

[1] Amyloidosis is a group of diseases that result from the abnormal deposition of a protein that is usually produced in the bone marrow, called amyloid, in various tissues of the body. http://www.mayoclinic.org/diseases-conditions/amyloidosis/basics/definition/con-20024354

review of the specialist report, Dr. Miles noted that oncology requested a 2008 biopsy report of the axillary lymph node and noted to repeat certain lab work in preparation for plaintiff's next follow up.  (*Id.* at 824).

In October of 2010, plaintiff was admitted to Allegiance Hospital and evaluated by hematology.  (Dkt. 71-5, Pg ID 820).  On October 29, 2010, Dr. John Axelson noted plaintiff had "monoclonal gammopathy which we feel is a benign monoclonal gammopathy."  (*Id.* at 811, 820).  Later in the report, Dr Axelson confirmed "a clinical picture that has previously suggested a benign monoclonal and stable IgG lambda protein," and requested further work up, including axillary lymph node and fat pad biopsies that would be stained for amyloidosis.  (*Id.* at 821-22).  As of November 3, 2010, the oncologist noted that plaintiff did not fit the criteria for smoldering or stage I MM, and noted that plaintiff may have amyloidosis. (*Id.* at 809).  Dr. Axelson's additional work up was completed prior to plaintiff's discharge on November 4, 2010, except for the biopsies, which could not be performed because plaintiff could not have general anesthesia due to his cardiac issues.  (*Id.* at 808, 815-16).  Plaintiff ultimately agreed to undergo the procedures with local anesthesia, but there were no available appointments and the biopsies were recommended to be followed up on an outpatient basis.  (*Id.* at 817).

After discharge from Allegiance, plaintiff was initially admitted to the MDOC's Duane Waters Hospital.  (Dkt. 71-4, Pg ID 804).  There, Dr. Shan

Ansari, MD, diagnosed plaintiff with MM, but noted amyloidosis still needed to be ruled out. (*Id.* at 800-01). Dr. Ansari also discussed plaintiff's care with Dr. Miles and noted that the appointment for the biopsies had been cancelled. (*Id.*) Dr. Adam Edelman, Medical Director of Utilization for Corizon, deferred the biopsies, noting that these procedures were not necessary as plaintiff's previous biopsy was negative and plaintiff should be followed onsite. (Dkt. 71-4, Pg ID 797). Dr. Edelman also deferred further oncology appointments because they were not necessary at that time. (*Id.* at 794). Dr. Miles was not involved in this decision. (Dkt. 69-1, ¶ 15).

Dr. Miles followed up with plaintiff on November 19, 2010, and noted to review the medical records. (Dkt. 71-4, Pg ID 798). On December 1, 2010, Dr. Miles contacted oncology and spoke with Dr. de Sonza, who recommended that plaintiff receive Melphalan 50 mg daily for four days and Prednisone 100 mg daily for four days. (*Id.* at 793). She noted that plaintiff should have a CBC weekly and a follow up with oncology in two weeks, and that the Melphalan/Prednisone treatment should be repeated in six weeks. (*Id.*) Dr. Miles spoke with Dr. Edelman regarding this treatment plan, and Dr. Edelman stated that, based on the type and stage of myeloma plaintiff has, it was unnecessary to initiate Melphalan/Prednisone treatment, as it was not consistent with NCCN ("National

Comprehensive Cancer Network") guidelines.[2]  (*Id.*)  Dr. Miles was to continue to monitor plaintiff's blood work and refer if there were any changes in his condition. (*Id.*)

On December 8, 2010, plaintiff was admitted to Allegiance Health concerning continued cardiac issues.  (Dkt. 71-4, Pg ID 790-91).  At that time, plaintiff was reassessed for the biopsies, but it was determined that the biopsies were too risky in light of plaintiff's condition and would be pursued on an outpatient basis.  (*Id.*)  On December 30, 2010, Cindy Shepherd submitted a 407 Request for the lymph node and fat pad biopsies.  (*Id.* at 783-84).  Dr. Edelman responded that the biopsies could not be performed unless plaintiff had a clinical improvement in his severe heart failure.  (*Id.*)  After a stay at Duane Waters Hospital, plaintiff returned to G. Robert Cotton on January 5, 2011.  (*Id.* at 785).

On January 8, 2011, Dr. Miles followed up with plaintiff after his discharge from the hospital and noted to review his records.  (Dkt. 71-4, Pg ID 781-82).  For the next year, Dr. Miles engaged in watchful waiting regarding plaintiff's condition as recommended by Dr. Trimble.  After extensive testing, the condition appeared benign and remained stable, but plaintiff was not physically able to handle the biopsies.  Dr. Miles continued to see plaintiff several times a month for his many health issues, performed regular lab work, addressed plaintiff's concerns

---

[2]  The NCCN is an alliance of 25 of the world's leading cancer centers.  (Dkt. 69-1, ¶ 17).

including MGUS, and referred plaintiff for further hospitalization when warranted. (Dkt. 69-1, ¶ 18; Dkt. 71-2, Pg ID 707-12; Dkt. 71-3, Pg ID 714-40, 748-55; Dkt. 71-4, Pg ID 756-79).  Plaintiff's severe heart failure did not improve after multiple hospitalizations, and Dr. Miles started plaintiff on Ultram to address complaints of bone pain.  (Dkt. 71-3, Pg ID 726-28).  On March 2, 2012, Dr. Miles noted that plaintiff's MGUS was stable and in remission with good prognosis, and he continued to monitor plaintiff's condition through lab work.  (Dkt. 71-2, Pg ID 693-96).  Dr. Miles last saw plaintiff on April 4, 2012.  (*Id.* at 678-79).  Dr. Miles asserts that he did not ignore any of plaintiff's serious medical needs, including his needs for work up concerning MGUS.  (Dkt. 69-1, ¶ 21).

On September 15, 2012, Dr. Shanthi Gopal noted that plaintiff's MGUS has no active issues.  (Dkt. 71-1, Pg ID 649-51).  On April 16, 2014, plaintiffs then-treating physician, Dr. Michael Brostoski, reviewed plaintiff's file and noted that plaintiff was "labeled" with MM and the diagnosis was propagated in the chart. (Dkt. 69-3, Brostoski Decl. ¶ 6).  According to Dr. Brostoski, while plaintiff received Melphalan treatment during his stay at Duane Waters Hospital in November 2010, none of the other records indicated that plaintiff was definitively diagnosed with MM.  (*Id.*).  Dr. Brostoski referred plaintiff to an oncology appointment via telemedicine.  (*Id.*)  However, on April 14, 2014, plaintiff refused to attend the telemedicine conference between himself and Dr. Kosierowski, an

8

oncologist. (*Id.* at ¶¶ 7-9). Dr. Kosierowski reviewed over 100 pages of primary reports and other documents to clarify plaintiff's diagnosis. (Dkt. 71-7, Pg ID 930-32). Dr. Kosierowski did not diagnose plaintiff with MM, but recommended two additional comparative tests be performed to compare to prior tests. (*Id.*) Those tests have been pursued, and plaintiff received a surgical consult that recommended observation due to his poor health. (*Id.* at 933-35). Plaintiff suffers from many chronic and debilitating medical issues, including severe heart failure, high blood pressure, and renal failure, has been advised that his treatment options are affected by his significant comorbidities. (Dkt. 69-1, ¶ 21; Dkt. 69-3, ¶ 12).

## III. ANALYSIS AND CONCLUSIONS

### A. Standard of Review

Summary judgment is appropriately rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 282 (2012). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 578

(6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52

(1986)), *cert. denied*, 561 U.S. 1038 (2010).  The court must consider all

pleadings, depositions, affidavits, and admissions on file, and draw all justifiable

inferences in favor of the party opposing the motion.  *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397,

401 (6th. Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the

assertion as specified in Rule 56(c)(1).  Once the movant establishes the lack of a

genuine issue of material fact, the burden of demonstrating the existence of such

an issue shifts to the non-moving party to come forward with "specific facts

showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986).  To sustain this burden, the nonmoving party may not rest on

the mere allegations of his pleadings.  Fed. R. Civ. P. 56(e)(2), (3); *see Everson v.

Leis*, 556 F.3d 484, 496 (6th Cir. 2009).  The motion for summary judgment forces

the nonmoving party to present evidence sufficient to create a genuine issue of fact

for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990).  "A

mere scintilla of evidence is insufficient; 'there must be evidence on which a jury

could reasonably find for the [non-movant].'"  *Dominguez v. Corr. Med. Servs.*,

555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see also

Donald v. Sybra, Inc.*, 667 F.3d 757, 760-61 (6th Cir. 2012).  Further, in civil

actions filed by inmates, federal courts

> must distinguish between evidence of disputed facts and
> disputed matters of professional judgment.  In respect to
> the latter, our inferences must accord deference to the
> views of prison authorities.  Unless a prisoner can point
> to sufficient evidence regarding such issues of judgment
> to allow him to prevail on the merits, he cannot prevail at
> the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006).

### B.    Deliberate Indifference Claim

Plaintiff alleges an Eighth Amendment claim for deliberate indifference to

his medical needs.  (Dkt. 34).  In the context of medical care, a prisoner's Eighth

Amendment right to be free from cruel and unusual punishment is violated only

when the prisoner can demonstrate a "deliberate indifference" to his serious

medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976).  "Where a prisoner

has received some medical attention and the dispute is over the adequacy of

treatment, federal courts are generally reluctant to second guess medical

judgments and to constitutionalize claims that sound in state tort law."  *Westlake v.

Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) (citations omitted).  Moreover, mere

negligence in identifying or treating a medical need does not rise to the level of a

valid mistreatment claim under the Eighth Amendment.  *Estelle*, 429 U.S. at 106.

A viable Eighth Amendment claim has two components, one objective and

the other subjective.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v.*

11

*McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).  A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'"  *Farmer*, 511 U.S. at 834.  Courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  *Hudson*, 503 U.S. at 8 (internal citations and quotation marks omitted).  Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *Farmer*, 511 U.S. at 834.  To establish the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that

he then disregarded the risk." *Id.* at 837.  In other words, this prong is satisfied

when a prison official acts with criminal recklessness, *i.e.*, when he or she

"consciously disregard[s] a substantial risk of serious harm." *Brooks v. Celeste*,

39 F.3d 125, 128 (6th Cir. 1994) (citing *Farmer*, 511 U.S. at 839-40).  "Basically,

there must be a knowing failure or refusal to provide urgently needed medical care

which causes a residual injury that could have been prevented with timely

attention." *Lewis v. Corr. Med. Servs.*, 2009 WL 799249, at *2 (E.D. Mich. Mar.

24, 2009).

    In cases where an inmate alleges deliberate indifference but the record

demonstrates that the inmate received medical attention and is, in essence, filing

suit because he disagrees with certain treatment decisions made by the medical

staff, the plaintiff fails to state a claim under the Eighth Amendment.  *See*

*McFarland v. Austin*, 196 Fed. Appx. 410, 411 (6th Cir. 2006) ("as the record

reveals that McFarland has received some medical attention and McFarland's

claims involve a mere difference of opinion between him and medical personnel

regarding his treatment, McFarland does not state a claim under the Eighth

Amendment"); *White v. Corr. Med. Servs., Inc.*, 94 Fed. Appx. 262, 264 (6th Cir.

2004) (affirming dismissal of the complaint for failure to state a claim where the

essence of plaintiff's claims was that he disagreed with the defendants' approaches

to his medical treatment where defendant discontinued plaintiff's previous course

of treatment and prescribed what plaintiff considered to be less effective treatment); *Catanzaro v. Michigan Dep't of Corr.*, 2010 WL 1657872, at *3 (E.D. Mich. Feb. 28, 2010) (plaintiff failed to state a claim of deliberate indifference when "he specifically alleges that he was given medications that proved ineffective to relieve his symptoms, rather than medications that he believed were more effective, such as Drixoral, Sudafed and Deconamine"), *adopted by* 2010 WL 1657690 (E.D. Mich. Apr. 22, 2010); *Allison v. Martin*, 2009 WL 2885088, at *7 (E.D. Mich. Sept. 2, 2009) (plaintiff failed to state a claim of deliberate indifference in violation of the Eighth Amendment when the complaint reveals plaintiff was seen over a dozen times for his eczema and was given medication, though not the "type" and quantity he requested). Thus, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. *Comstock*, 273 F.3d at 702.

### C.   Dr. Miles was not Deliberately Indifferent to Plaintiff's Serious Medical Needs

According to the medical record, plaintiff has received continuous medical evaluations, tests, treatment and medication while under the care of Dr. Miles, and he continued to receive treatment while under the care of Dr. Brostoski. Plaintiff

acknowledges that he received treatment, but contends that the evaluations were not adequate and that he did not receive proper treatment. Plaintiff contends that defendant incorrectly states that plaintiff does not have multiple myeloma. While defendant acknowledges that there are references to multiple myeloma in the medical record, and that two doctors, de Souza and Ansari, thought plaintiff should receive treatment with Melphalan and Prednisone, defendant asserts that there was never a formal diagnosis of multiple myeloma, his condition remained stable, and a watchful waiting approach was recommended for his ongoing care. Irrespective of the proper diagnosis, plaintiff's medical records conclusively establish continuous evaluation and care for his medical conditions and complaints. "[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment. When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *See Comstock*, 273 F.3d at 703 (citing *Estelle*, 429 U.S. at 106); *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 447 (6th Cir. 2014) ("[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."); *Gabehart v. Chapleau*, 110 F.3d 63, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997) ("Misdiagnoses, negligence, and malpractice are not, however, tantamount

to deliberate indifference.").

The record shows that plaintiff's requests for treatment were not ignored. Rather, plaintiff was prescribed alternative courses of treatment based on the doctors' exercise of their professional medical judgment regarding the appropriate course of treatment. Even if these decisions were wrong or negligent, they do not show deliberate indifference to plaintiff's serious medical needs. Dr. Miles provided medical attention and provided diagnostic tests and medication, just not the medication or treatment plaintiff wanted. That plaintiff disagrees with this course of treatment does not amount to deliberate indifference because it is well settled that "differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim." *Christian v. Michigan Dep't of Corrs.–Health Servs.*, 2013 WL 607783, at *5 (E.D. Mich. Jan. 28, 2013) (citation omitted), *adopted by* 2013 WL 607779 (E.D. Mich. Feb. 19, 2013); *see also Greenman v. Prison Health Servs.*, 2011 WL 6130410, at *10 (W.D. Mich. Dec. 8, 2011) (granting summary judgment where "the record shows that defendant treated plaintiff's condition on an ongoing basis with appropriate medications. Further, plaintiff's preference for narcotics and his dissatisfaction with the non-narcotic pain medications prescribed by [defendant] falls far short of supporting an Eighth Amendment claim.").

16

In sum, plaintiff's disagreement with particular medical decisions made by Dr. Miles and his conclusory allegations of deliberate indifference do not negate Dr. Miles' allegations that plaintiff's medical needs were reasonably and diligently addressed over an extended period of time, and continue to be addressed.  In his response, plaintiff also takes issue with his treatment for Hepatitis C, alleging that he was told on August 6, 2014 by a "Dr. Hugidson" that he would not be given treatment because the pills cost $1,000 each.  However, plaintiff's amended complaint does not include any allegations regarding treatment for Hepatitis C, and plaintiff may not raise new claims in response to defendant's summary judgment motion.  *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005).  Moreover, plaintiff's unsupported allegation regarding Hepatitis C does not involve Dr. Miles, and indeed, post-dates the filing of this lawsuit by approximately 18 months.  Therefore, plaintiff's allegations regarding his treatment for Hepatitis C do not defeat defendant's motion for summary judgment, and plaintiff's Eighth Amendment claim should be dismissed with prejudice.[3]

---

[3] Plaintiff also complains that his medical records were filed under seal.  However, as defendant explains, these records were filed under seal to protect plaintiff's privacy and comply with privacy law, including the provisions of HIPAA, to avoid unnecessary public disclosure of plaintiff's medical record, and not for any nefarious or improper reason.  Plaintiff's objection therefore is meritless.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion for summary judgment (Dkt. 69) be **GRANTED** and that plaintiff's claims against defendant be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: January 6, 2015                          s/Michael Hluchaniuk
                                               Michael Hluchaniuk
                                               United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 6, 2015, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.  I also certify that I served the foregoing paper
via U.S. Mail on <u>Charles Mayfield, #127467 at Earnest C. Brooks Correctional
Facility, 2500 S. Sheridan Dr., Muskegon Heights, MI 49444</u>.

                                               s/Tammy Hallwood
                                               Case Manager
                                               (810) 341-7887
                                               tammy_hallwood@mied.uscourts.gov